May it please the court, my name is Al Lerner, and along with Mick Taliff, my co-consul, we represent three Montana plaintiffs. We represent a man named Ron Otto, a man named Aaron Pursley, and Little Sharps Manufacturing, LLP, which is the Limited Liability Partnership. The defendant in this case is Dakota Arms, which is a Minnesota corporation, and it does its principal business in Sturgis, South Dakota. Before I launch into my argument, there is one fact in our reply brief that I have to correct. It's our position and our allegations in the complaint that the royalty payments were to be made to the Little Sharps plaintiffs in Montana, but the reply brief somewhat gave the impression that Dakota Arms had made some payments, and that's not correct. So no payments were ever made? No royalty payments were made in Montana, and I did want to correct that right away. Were there any actual shipments of rifles from South Dakota to Montana? There were actual shipments of rifles from South Dakota to Montana, accepted by Little Sharps. Additionally, Dakota Arms billed Little Sharps and invoiced them in Montana on numerous occasions. Further, Dakota Arms solicited Montana persons to buy the particular gun at issue and sent solicitations into the state of Montana for that purpose. And Dakota Arms, of course, as the court knows from the briefs, maintains an interactive website in Montana. Dakota Arms further, we believe, committed the situs of the tort to Montana in the unfair trade practice action, excuse me, in the trade secrets action, because what they did was that the guns, including the trade secrets, were sold in Montana to Montanans. Actually, under the BT Metalworks case, I believe that just the shipment of product and the contract to have it produced for Little Sharps, whether it be in South Dakota or in the case of the Lashes, I believe that's sufficient to at least establish limited jurisdiction here. If that were the basis of your claim, I would agree with you. But isn't the basis of your claim essentially an intellectual property-based misappropriation claim? And why isn't the locus of that tort in South Dakota? We have several claims. The main basis of our claim is a breach of contract action, i.e., what happened is that they failed to pay the royalties that were agreed to in the contract, and the royalty payments were to be made in Montana. And further, so it does relate. I mean, I'll skip right over purposeful availment. It does relate. It was paid by the payor in Montana and received by the recipient in South Dakota, right? No, the payor is in South Dakota. It's received by the recipient in Montana. All right. Yeah. The situs of the payments of the royalties under the contract were to be to our clients in Montana. Okay. Counsel, how do you relate that to your long-arm statute? Which provision would give you jurisdiction? There are three provisions which would give us jurisdiction under our long-arm statute for limited purposes. I won't address general jurisdiction right now. And that's provision A, the transaction of any business in Montana. B, the tort which accrues in the state of Montana. And number E, which is an agreement to ship product, an agreement to ship materials into the state. Okay. Let me go to B first because that's the tort action. And in response to Judge Tolman's question as to whether the real argument here wasn't a tort action for misappropriation of the design plans, you answered no. The principal problem was breach of contract. So that sort of knocks B out, doesn't it? No. I don't believe it does. I believe B is a perfectly reasonable statute to assert jurisdiction on. For failure to pay royalties in Montana? No, for misappropriation of trade secrets. Okay. But that – To go further on that – I guess I misunderstood what you said in answer to Judge Tolman's question. No. To Judge Tolman's question, I said that our principal action is a breach of contract. In addition to that, there are tortious actions alleged in the complaint. Okay. Let's start with the contract action. Okay. So your contention that that would come under A or does it come under E? It comes under both. Okay. Let's start with A. So what's the transaction of business within Montana? That's a very unusual long-arm statute. I've looked at a lot of long-arm statutes. I used to teach in this area, but this is a little narrower long-arm statute than I've seen. The transaction of business within Montana can be the shipping of products into Montana, as our Supreme Court recently held in the 2004 case, which is BT Metalworks. And that case was not available to Magistrate Osby when she made a decision in this case. But that case, basically, a fellow had latches manufactured for a tribe in Montana, and he was brokering them, and he later moved to Montana by, I believe, an Ohio concern. If I'm correct, I might have the states wrong. And the Montana Supreme Court held that on the contract, that the shipment of the parts into the state of Montana, the contracting for parts to be brought into Montana, was enough under Subsection A, and I believe E, although I'm not sure of that, to confer long-arm jurisdiction. And under those circumstances, I believe ‑‑ Does it make a difference that the amount here averages only $14,000 a year when Dakota Arms sells about $2.4 million in sales? That wasn't the shipment under the contracted issue here, Your Honor. That was part of our argument for general jurisdiction. I'm still trying to get a handle on how big a volume of sales are we talking about. But it sounded to me from reading your briefs like we were talking about a relatively small amount of goods, in part because of the dispute over the royalty payments. The goods in part, the $70,000, does not relate to any of the contract between Little Sharps and Dakota Arms. So do we know what the volume was, or is the record silent on that? The record is silent on that. I can say, regarding the $70,000, Your Honor, that that is volume from a permanent dealer that Dakota Arms has in Ronan. Right. I'm assuming that it includes other weapons besides this Model 1874 pitcher. Undoubtedly, it probably includes other weapons. I don't know whether this particular weapon was part of Ronan's inventory. Is that your argument on specific jurisdiction, or do you say that's relevant only to general? I think that's relevant to general jurisdiction, Your Honor. I don't think that point is, except to show connections to the State, relevant to specific jurisdiction. If it's all right, and if the Court doesn't have any further questions, I'd like to reserve two minutes and 39 seconds for rebuttal. Do you have a question? Okay. Thank you very much. Thank you. Mr. Strong? Thank you, Your Honor. I would love to respond to any questions you might have first. Otherwise, I would like to address the BT Metal case, which Judge Osby didn't have a chance to read, came out about a month after she decided the case. We believe that that does not provide a basis for specific jurisdiction here. Your Honor, it is true that this statute is narrower than many state statutes. The BT case is a good illustration of how restrictive it is if it took those kind of facts in order to achieve long-arm jurisdiction of a manufacturer, of an outside manufacturer. The Montana State Supreme Court found only that it was doing business, refused to decide whether the other portions of the specific arm of the long-arm jurisdiction statute applied, and under the doing business arm, if you would, found out that it took years of shipping these latches to a defense manufacturer on reservation. It took then a specific negotiation, cutting out the plaintiff with the manufacturer for its own contract, and then the out-of-state manufacturer entered into a contract and shipped product under that contract, which supplanted the product that the plaintiff in that case had. It took extensive discussion for the court to decide that that... What contacts were there with Montana other than the fact of shipping the latches into Montana? Well, the contacts with Montana, I would argue, were going to the state, the decision suggests, and entering into negotiations and contract to provide... I don't know if it was by interstate commerce or physically in Montana. Well, that would seem to make a difference. Okay, so we don't know whether the negotiation... We know that we're shipping things into Montana. The Ohio Corporation first shipped things, then they contacted the Montana buyer, and after having contacted the Montana buyer, they then entered into a contract to ship the latches directly and cut out the plaintiff. Okay, what did the Montana Supreme Court rely on in that case? The Montana Supreme Court relied on this combination of factors. It's at paragraph 17 of the report, as I recall. Can you give me a cite to that case? Sure. It's 100 Pacific 3rd, 127. And they did an extensive discussion and decided, Your Honor, that this combination of factors was what caused them to make their decision. And I say so specifically at paragraph 25 and on of their report. That's paragraph 25 of the internet citation for the Montana courts, 2004 Montana 286, paragraph 25 and on. The court emphasizes that it is this extensive combination of long dealing. My own reaction, Your Honor, was that they should have held that there was a commission of a tort because clearly supplanting their own previous middleman creates intentional interference with a contract between two Montana residents. The court did not hold that, although it discusses that at length. But it seems to me that that would be an independent and perfectly understandable ground for jurisdiction because it's interference with a contract between two Montana residents, which leads me to the second part of the BT case I'd like to discuss, if I might, unless the court has some other questions about the specific jurisdiction, which is the second end of the due process calculation, due process. And that is that in our case here, as opposed to the BT, there are no facts. There simply are no facts to suggest purposeful availment. And Judge Osby did not go into that end of the calculus because BT hadn't been decided beforehand and because we submit without BT there's absolutely no reason to even go beyond where she did. There is no reason why this court on review can't make that finding itself. We suggest that you can decide otherwise in our brief, but there's no reason why you can't on review of a magistrate judge's decision make that finding. But the question is purposeful availment. And in the BT Industries case, the manufacturer from Ohio had directed its activities toward Montana and had purposely sought out contractual relationship in Montana with this defense contractor up on the Assiniboine and Sioux Reservation. In our case, the facts of purposeful availment, which is an equally important part of the test, are simply absent. This is a South Dakota corporation manufacturing its firearms in South Dakota. It has allegedly converted to its own use some trade secrets and intellectual property in South Dakota. A close look at the other Montana Supreme Court decisions under this fairly unique long-arm statute shows that the argument that, for example, proceeds were to be sent into Montana is unavailing. I would specifically refer the court to the Byrd v. Hiller case, which is often cited by the Montana courts, which is a good illustration. In that case, you'll recall the Idaho lawyer was hired to represent the Montana people and converted the settlement checks, was the allegation, kept them. And one of the grounds for Montana jurisdiction was argued to be, well, we were supposed to get the checks here, but the operative facts, the essence of the lawsuit was the conversion of these checks in Idaho. And so the idea that they should have been paid to Montana people had no bearing on the decision on jurisdiction. As I understood your opposing counsel's position, he was essentially arguing that the thrust of his claim is breach of contract. And would you agree with that? I don't think any fair reading of the complaint gives you that, Your Honor. And the complaint has fled. What troubles me is the question is what contract are we talking about? Are we talking about a contract to manufacture and ship rifles, or are we talking about the tort of misappropriation of some sort of trade secret or whatever the intellectual property right would be? The essence is this was their idea and that they went to South Dakota, took the plans and specifications and their idea, and that after an initial recognition of it, this Dakota Arms converted it to their own use, denies that there's any contract, and is allegedly currently profiting by selling the products of their own intellectual property. And, of course, we're also plagued by the fact that there was no contract. If there's a contract at all, it's an oral contract. Is that right? Well, that's right. But we're taking the allegations of the complaint as true. But if you look through the – But there's no evidence of a written contract, right? The deceased owner of Dakota Arms wouldn't enter into one. There's no written contract. My word is my bond until I die. And then he did. And then he did. Okay. So the – and, of course, we're at the pleading stage. We're at this stage. We take the allegations of the complaint as plagued. But there's certainly no evidence of any written contract. And the actual contract itself, as alleged, is a moving target throughout the complaint and is certainly a moving target throughout these proceedings. But the essence of the lawsuit is that these people took their idea and went to South Dakota with it, and it was kept and being used for somebody else's profit, and they're due the damages claimed. So we do not agree that it is a contract action and most of the damages that they're seeking from the prior of the complaint, you will notice, are specifically excluded. Montana law contract damages. And so a contract action wouldn't do them very good. I believe I've used my time. Unless the Court has any further questions. Thank you very much, Counsel. Thank you, Your Honor. Count one of our complaint filed in the state court case is entitled breach of contract. A reference to it will show that part of the contract was payment of the royalties. Well, clearly you have a claim for unpaid royalties. But your answer to my question was that the thrust of my case is a breach of contract action, and I'm trying to figure out what contract are we talking about here. We're talking about the contract made between Little Sharps and Dakota Arms to, one, manufacture the rifles, two, to ship them to Dakota Arms for purchase at 40% below the price. But isn't the real essence of your case here, they stole our idea to purchase a miniature version of the Sharps Model 1874 rifle, and as a result of their wrongful appropriation of our plans, they owe us royalties and damages for all the money that we would have made had they honored that agreement? Well, misappropriation of trade secrets has tort damages also, but I would more characterize the royalty payment as an agreement between Don Allen and Little Sharps. They agreed that a royalty would be paid. Well, I guess it depends on how you characterize it. Wouldn't it be, it would be we agreed to adopt these plans and make an 80% scale version of the rifle, which necessitated a redesign, I guess, of the original drawings for the Sharps rifle. And it was that idea that was misappropriated to the plaintiff's damage. That was misappropriated to the plaintiff's damage. Another part of our lawsuit, and I think an integral part, is that the parties agreed to a payment of a royalty after the first 100. But that's the measure of damages, is it not? But it's also a breach of the contract itself, not to pay the royalty. So part of it is a measure of damages. Excuse me, Your Honor. If you're right on that, about the failure to pay royalties as being a breach of the contract, in order to avoid jurisdiction in Montana, then Dakota Arms should have provided for the payment of royalties into a bank account in South Dakota or someplace other than Montana. So under your theory, because they were going to send a check, a mail a check into Montana, that alone, and failure to do that alone, would be sufficient to give you jurisdiction in Montana. Is that right? Well, that's probably – I don't take the same view of the statute being as narrow as the court, by the way, because of some of our other cases. And I think BT solely was on 4B1A, by the way, which is the transaction of business in Montana. Yeah, I looked at the briefs while we were talking. There's one big difference in the BT case, and that is those latches were manufactured specifically for Montana. They were a designed item that only fit whatever was – doors, fences, whatever – in Montana. So it was a little bit different, because this was a rifle that was being distributed nationally. It wasn't designed for Montana. But it was designed under the contract and sold. It was designed under the contract, certainly, from your folks in Montana. But with respect to those royalties, again, you haven't gotten – if the mere failure to mail a check into Montana is enough to give you jurisdiction under A, then that's a pretty broad assertion of jurisdiction simply to fail to mail a check. Your Honor, I believe the – I'm running over my time, but I believe the totality of circumstances is what counts here. I believe that we do have jurisdiction under not only BT, but under Goff, under Trico, which are other cases. I believe even under Decker Cole that this court decided in 1986. I think it's clear, personally. Okay. Thank you very much, counsel. The case just argued is submitted.
judges: Beezer, Tallman, Bybee